**Clarence B. BAILEY, Plaintiff,**

v.

**FEDERAL INTERMEDIATE CREDIT BANK OF ST. LOUIS, Defendant.**

**No. 84–0488–CV–W–6–9.**

United States District Court,
W.D. Missouri, W.D.

April 25, 1985.

Thomas E. Hankins, Gladstone, Mo., Bruce A. Bailey, Warrensburg, Mo., for plaintiff.

James W. Byrne, St. Louis, Mo., Donald W. Giffin, Kansas City, Mo., for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I AND ORDERING PLAINTIFF TO SHOW CAUSE WHY THE REMAINING COUNTS SHOULD NOT BE DISMISSED FOR LACK OF JURISDICTION

BARTLETT, District Judge.

In Count I of his complaint plaintiff seeks a declaratory judgment that defendant was without legal authority to discharge plaintiff as executive director of the Osage Production Credit Association (the Association). Defendant moved to dismiss Count I on the ground that Count I failed to state a claim upon which relief can be granted because defendant was authorized by Congress to terminate plaintiff. Further, defendant argues that the bylaws of the Association explicitly authorized defendant to terminate the chief executive officer of the Association. In support of its motion to dismiss, defendant filed affidavits and a copy of the Association's bylaws.

Because defendant relied on information outside the pleadings, the parties were advised that defendant's motion to dismiss would be treated as a motion for summary judgment under Rules 12(b) and 56, Fed.R. Civ.P.

Plaintiff opposed defendant's motion for summary judgment and filed a cross-mo-

---

tion for summary judgment. Plaintiff concedes that defendant may generally supervise the Association, but plaintiff asserts that Congress intended that production credit associations should be locally managed and controlled. Plaintiff argues that local control is thwarted if defendant's general supervisory power includes the authority to remove the chief executive officer of a production credit association. Plaintiff further argues that the Association's bylaws authorizing defendant to remove the Association's chief executive officer are inconsistent with Congress' intent that associations be locally managed.

The parties agree that the issue raised by the cross motions for summary judgment is whether defendant had the legal authority to remove plaintiff from his position as the chief executive officer of the Association under the provisions of the Farm Credit Act of 1971, as amended, 12 U.S.C. §§ 2001, *et seq.*

### Facts

In February, 1983, the Farm Credit Administration approved revised standard and optional bylaws to be adopted by production credit associations. At defendant's board meeting on April 21 and 22, 1983, defendant approved the revised bylaws. On June 23, 1983, the board of directors of the Association unanimously adopted the revised bylaws, including certain optional bylaws, subject to certification by defendant. As corporate secretary, plaintiff certified that "the board of directors of the said association duly adopted the foregoing as the bylaws of said association." The Association's revised bylaws were approved by defendant on August 8, 1983.

Plaintiff had been employed by the Association since June 10, 1963, and had been the executive director since December 1, 1965. Plaintiff did not have a written employment contract with the Association. There was no agreement between the Association and plaintiff about how or why he could be terminated.

On March 14, 1984, representatives of defendant reported to the Association's board of directors on the results of the bank's audit of the Association. Defendant requested that the Association's board of directors terminate plaintiff as the Association's chief executive officer. The Association's board of directors unanimously refused to do so. Therefore, defendant terminated plaintiff as executive director of the Association.

When plaintiff was terminated by defendant, the Association's bylaws provided in part as follows:

*500.2—Election of Chief Executive Officer and Other Officers*

The board shall elect a chief executive officer who shall serve at the pleasure of the board and shall continue in office until a successor is elected and takes office unless the chief executive officer shall resign, die, retire, or be removed by the board or by the bank. Other association officers shall be a secretary, a treasurer, and any other salaried officers provided for by the board. . . .

520—REMOVAL

The chairman and the vice chairman may be removed from their positions as officers of the board, and the chief executive officer may be removed from office at any time by a majority vote of the entire membership of the board of directors or by the bank.

### Discussion

Under the Farm Credit Act of 1971, Congress established:

[A] System of limited-purpose, farmer-owned banks and associations designed to furnish sound, adequate, and constructive credit to farmers and ranchers and their cooperatives. The 1980 Amendments to the Farm Credit Act of 1971 expanded the classes of eligible borrowers to include producers or harvesters of aquatic products, and expanded the lending authority of System institutions to enable them to be more responsive to the credit needs of agriculture.

12 CFR 611.200.

The Farm Credit System is directed by the Farm Credit Administration (FCA)

which is "an independent agency in the executive branch of the Government." 12 U.S.C. § 2241. Below the FCA are twelve farm credit districts. 12 U.S.C. § 2221. Each farm credit district has a federal intermediate credit bank that can loan money to production credit associations or can participate with associations in loaning money to eligible borrowers. 12 U.S.C. § 2074. In each farm credit district there are a number of production credit associations that make loans to eligible borrowers. 12 U.S.C. § 2096.

In 1971, when Congress decided to continue the Farm Credit System, Congress intended that the Farm Credit System furnish American farmers and ranchers "sound, adequate, and constructive credit."

It is declared to be the policy of the Congress recognizing that a prosperous, productive agriculture is essential to a free nation and recognizing the growing need for credit in rural areas, that the farmer-owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations.

12 U.S.C. § 2001(a).

In the same statutory section, Congress stated that an additional objective of the Farm Credit System was "to encourage farmer- and rancher-borrowers participation in the management, control and ownership of a permanent system of credit for agriculture." 12 U.S.C. § 2001(b).

Various statutory and regulatory provisions implement the objective of borrower participation in the management of the Farm Credit System. For instance, member participation in the affairs of production credit associations is assured by the statutory and regulatory provisions providing that members of an association shall serve on an association's board. 12 U.S.C. § 2092; 12 CFR 611.1080.

Congressional concern about furnishing "sound, adequate and constructive credit" was reflected in the requirement that the FCA and credit banks regulate and control the organization and operations of associations, the primary lenders in the system. For instance, the FCA

shall have the power, under rules and regulations prescribed by [the FCA] or by prescribing in the terms of the charter or by approval of bylaws of the association, to provide for the organization of the association, the initial amount of stock of the association, the territory within which its operations may be carried on, and to direct at any time such changes in the charter as [the FCA] finds necessary for the accomplishment of the purposes of this chapter.

12 U.S.C. § 2091.

Furthermore, Congress authorized and directed the FCA "to delegate to a Federal intermediate credit bank such of the duties, powers, and authority of the Farm Credit Administration with respect to and over ... production credit associations, their officers and employees ... as may be determined to be in the interest of *effective administration*." 12 U.S.C. § 2253 [emphasis added]. The board of directors of each farm credit district has the power "to ... [p]rovide rules and regulations, governing ... associations in the district, not inconsistent with law." 12 U.S.C. § 2227. Federal intermediate credit banks are required to "supervise the exercise by the production credit associations of the functions vested in or delegated to them." 12 U.S.C. § 2072(15).

Virtually every aspect of an association's operations are supervised and controlled by the FCA and/or credit banks. For instance, a credit bank, along with the FCA, approves revisions in an association's bylaws (12 CFR § 611.1010(b)); supervises the associations in the district "to assure that authorized services are available to eligible persons in the most effective and efficient manner" (12 CFR § 611.1010(f)); establishes loan policies for associations in its district (12 CFR § 614.4030); supervises credit operations (12 CFR § 614.4050); con-

ducts regular audits including evaluations of the effectiveness of management (12 U.S.C. § 2254; 12 CFR § 614.4051; 12 CFR § 617.7030); and takes corrective action based on recommendations in examinations and audit reports (12 CFR § 611.1010(i)). If corrective action ordered by the credit bank does not solve the problem, the FCA may declare an association insolvent. 12 CFR § 611.1130. The board of directors of an association cannot liquidate the association without approval from the credit bank's board and the FCA. *Id.*

In the personnel area, an "objective appraisal" must be made by the FCA of the "effectiveness" of an association's management at least once a year. 12 U.S.C. § 2254. Also, a credit bank is authorized to "[a]pprove the salary scale of the officers and employees of" associations in the bank's district. 12 U.S.C. § 2072(15). Although an association may elect a chief executive officer (12 U.S.C. § 2093(17)), the supervising credit bank is explicitly granted the power to "approve ... *the appointment* and compensation of the chief executive officer" of the association. 12 U.S.C. § 2072(15) [emphasis supplied].

Neither the FCA, the supervising credit bank, nor the employing association is given explicitly the authority to terminate the association's executive director. However, implicit in the power to elect an executive is the power to terminate. Therefore, the employing association could terminate its executive director. Likewise, implicit in the statutory scheme is the authority for the FCA and the supervising credit bank to terminate an association's executive director if the bank believes it is necessary to assure a *sound farm credit system*. The FCA has the general authority to assure that associations are effectively managed. See, for instance, 12 U.S.C. §§ 2253 and 2254. No limitation is placed on the remedial steps the FCA can take to correct deficiencies in the effectiveness of an association's management as shown by the statutorily required audit. 12 U.S.C. § 2254. (The FCA may delegate to a credit bank any *power over associations* that the FCA determines to be in the "interest of effective administration." 12 U.S.C. § 2253.)

Also, Congress expected a credit bank to have control over the executive director of each association in the bank's district because the bank must approve the appointment and the compensation of the executive director. The refusal of a bank to approve any compensation for the executive director would effectively terminate the executive director's services.

Furthermore, Congress explicitly authorized the FCA "[w]here necessary and appropriate to carry out the policy and objectives of this chapter, [to] issue and amend or modify Federal charters or the bylaws of institutions of the System." 12 U.S.C. § 2252(2). By regulation, a farm credit district board acting as such or as the board of a credit bank "shall ... [a]dopt bylaws for each bank and approve bylaws for associations from standard and optional bylaws approved by the Farm Credit Administration." 12 CFR § 611.1010. Pursuant to this statutory and regulatory authority, the FCA issued, the Association adopted, and defendant's board approved, bylaws which specifically authorized the bank to remove the Association's executive director.

Plaintiff has failed to demonstrate that these bylaws are not "appropriate to carry out the policy and objectives of the Farm Credit Act." 12 U.S.C. § 2252(2). If authorizing the credit bank to remove the executive director conflicts with borrower control over the association, the conflict is inherent in the policy and objectives of the Farm Credit Act. Congress intended that the FCA resolve such conflicts. The FCA did so by requiring associations to adopt bylaws authorizing banks to remove the executive director. Memoralizing in an association's bylaws the supervising credit bank's authority to remove the executive director assures that the chief operating officer will follow the operating policies of the FCA and of the supervising credit bank. Compliance with the operating policies of the FCA and the supervising credit bank is entirely consistent with Congress' interest in providing an effectively managed, sound farm credit system. Therefore, when plaintiff was terminated by the defendant, the action was in accord

with the Association's bylaws which implement the policies and objectives of the Farm Credit Act.

For the reasons stated in this opinion, defendant had the authority to remove plaintiff as executive director of the Association. The parties have agreed that, if defendant had the authority to terminate plaintiff, the issues in Count I must be decided in favor of defendant. Therefore, defendant's motion for summary judgment on Count I will be granted and plaintiff's motion for summary judgment will be denied.

It is hereby ORDERED that:

1) summary judgment on Count I is granted in favor of defendant and against plaintiff;

2) plaintiff's motion for summary judgment on Count I is hereby denied; and

3) within thirty days from the date of this Order plaintiff shall show cause in writing why the remaining counts of his complaint should not be dismissed for lack of jurisdiction.